[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband, 43, and the defendant wife, 44, married on November 27, 1976 at Cazenovia, New York. The parties have three children issue of their marriage: Reilly Elizabeth, born January 3, 1978; Thessaly Ann, born June 19, 1979 and John Lyell, born May 26, 1981, all of whom are in good health. The remaining allegations of the complaint are found proven.
Neither party brought any assets to the marriage.
The plaintiff obtained an M.B.A. shortly after the marriage, and the parties, who were living in Arizona at the time of their marriage, moved to Somerville, Massachusetts to enable the plaintiff to commence employment with a small company called Top Copy. The plaintiff eventually became the C.E.O. of Top Copy, advancing in salary from approximately $25,000.00 to $80,000.00 annually. The plaintiff left the company in 1985 after realizing that he was not able to acquire an interest in the business.
In 1979 the parties purchased a home in Framingham, Massachusetts, for $51,000.00, with a loan from the plaintiff's father. In 1982 the Framingham property was sold for $65,000.00 and the parties purchased a home in Sherborn, Massachusetts, for $118,500.00, again with a private mortgage from the plaintiff's father.
After leaving Top Copy, the plaintiff began employment with Pandick Press which was later acquired by Pitney Bowes. The plaintiff was then earning $125,000.00, which was continued with Pitney Bowes.
In 1988 the parties purchased a summer home in New Harbor, Maine. The plaintiff arranged financing of the cottage with his father who lent the entire price, $129,000.00. No mortgage was given and the plaintiff alone signed the loan note. CT Page 5460
The defendant's parents also had a home in New Harbor, Maine which is now owned by the defendant and her sister.
In 1992, the plaintiff accepted reassignment to the Pitney Bowes headquarters in Stamford, Connecticut. The Sherborn house was sold for $325,000.00. Using $130,000.00 the plaintiff had recently inherited from his mother's estate, the net proceeds from the Sherborn sale and a rewritten family mortgage and note payable to plaintiff's family, the parties purchased a home in Weston, Connecticut, for $645,000.00. The title passed to them on October 31, 1992. The plaintiff repays $2,500.00 monthly which includes a modest interest charge; $185,000.00 remains on the loan. Once again, the defendant did not sign the note evidencing the plaintiff's loan from his father.
While in Sherborn, and again after moving to Weston, the defendant was active as an E.M.T. volunteer. Except for some casual employment as an apple sorter and occasional painting work, the defendant has not been gainfully employed for pay or gain outside the home since shortly after the marriage when she worked as a receptionist for a short time. The defendant has a college degree with a major in history. The plaintiff also participated as an E.M.T. in the volunteer program and was very active as a soccer coach in the local school or recreation leagues.
The plaintiff spoke of several reasons for the marriage breakdown. He testified that the defendant was unwilling to listen to his work related problems when he was experiencing distress caused by a superior in 1989 and 1990. He was shortly thereafter promoted. He described an inability to reach an agreement with the defendant as to addressing their son's problems. He complained about not being comfortable with the defendant's father and that they had fewer and fewer friends. The plaintiff described a philosophical difference with the defendant in handling the family's finances. Finally, the plaintiff claimed that a lack of intimacy existed.
The offer of the promotion requiring a move to Connecticut was characterized by the plaintiff as the parties' effort to start fresh or to renew their marriage, although the defendant and the children were happy and contented in Sherborn. The defendant viewed the move to Weston as an act of support to enable the plaintiff's career to flourish. The plaintiff acknowledged that the move aided his career. CT Page 5461
The fresh start came to an abrupt end due to the plaintiff's dalliance with Valerie Belli, another employee of Pitney Bowes. The plaintiff's adulterous affair was first consummated in December, 1992 by the plaintiff's own admission at trial. At his deposition, the plaintiff placed the initial act of infidelity as occurring in November, 1992.
At any rate, the clandestine affair continued for months without the defendant's knowledge, and when the defendant asked if there was another woman the plaintiff denied it. In June, 1993, the plaintiff told the defendant that he had decided to separate. In October 1993, the plaintiff saw an attorney regarding a dissolution and in the same month told the defendant he was renting a furnished apartment in Stamford, which he did do.
On November 20, 1993 the plaintiff left the marital home. During the same month, Valerie Belli was transferred from Philadelphia and she rented an apartment in Scarsdale, New York. The plaintiff spent his time at her Scarsdale apartment, arranging for call forwarding from the Stamford apartment's telephone. The plaintiff shared and continues to share the rental expense and utilities with Valerie Belli. The plaintiff's activities in this regard were so well camouflaged that the defendant did not suspect any amorous activities by the plaintiff until March, 1994, when phone bills led her to the Scarsdale landlord.
Because of the plaintiff's continuing deception, the court cannot conclude that these misdirections were engaged in by a husband whose marriage was already irretrievably broken down.Venuti v. Venuti, 185 Conn. 156. On the contrary, the court concludes that his affair of the heart was the primary cause of the marriage breakdown.
In 1990, the plaintiff inherited from his mother's estate a stock portfolio having a cost basis to him of $520,000.00. The portfolio is maintained by Society Bank in a custodial account, now having a market value of $791,300.00 with a cost basis of $450,000.00. The plaintiff withdrew $12,000.00 last fall and had withdrawn $130,000.00 to complete the Weston home purchase. The account produces income of $20,000.00 annually.
The plaintiff's present position is Vice President National Operations which he attained in October 1994. The plaintiff's current base salary is stated on his financial affidavit to be CT Page 5462 $164,000.00. He received bonuses of $51,300 in 1995 and $51,000.00 in 1994 for each prior year's performance. In addition, he deferred $9,240.00 in 1994 and $8,994.00 in 1993 per 401(k). Pitney Bowes began a new retirement plan as of January 1, 1995 known as RAP, a defined contribution plan. This plan replaced an earlier defined benefit plan, (Plaintiff's Exhibit #8) and contained a starting balance of $55,746.00 in the plaintiff's account.
The fair market value of the Weston home is found to be $700,000.00. (Plaintiff's Exhibit #7). The New Harbor, Maine cottage is found to have a fair market value of $129,000.00.
The defendant has a 50% interest in another cottage located in New Harbor, Maine which she values at $60,000.00 for her interest.
Except for her EMT training and experience, and some self taught house painting skill, the defendant's present employment skills are nil. She has been a homemaker and mother for the last seventeen years.
Having reviewed the evidence in light of the statutory criteria, and also considering the tax impact on the following orders, the court enters the following decree.
1. A judgment may enter dissolving the marriage, all of the allegations of the cross-complaint being proven, the correct marriage date being November 27, 1976. The complaint is dismissed as moot.
2. The parties shall have joint legal custody with physical custody in the defendant and reasonable visitation to the plaintiff.
3. The plaintiff shall pay to the defendant the sum of $6,000.00 monthly until the death of either party or the remarriage of the defendant.[1]
4. The plaintiff shall pay to the defendant the sum of $2,400.00 monthly for the support of the three minor children, until such time as § 46b-84(b) no longer allows maintenance for all three children, at which time a modification will be in order if not sooner ordered.
5. A wage withholding order is entered for the periodic alimony and for the child support, to be contingent if agreed, CT Page 5463 otherwise to be determined after hearing.
6. The plaintiff shall continue to provide the minor children with all medical coverages available through his employment. This order is subject to the provisions of C.G.S. § 46b-84(d). The parties shall divide equally any uninsured bill balance incurred for the treatment of the children.
7. The defendant is awarded the plaintiff's interest in 7 Lilac Lane, Weston, Connecticut. If a properly executed quit-claim deed is not delivered within 30 days, then the transfer shall be completed pursuant to statute. The defendant shall be responsible for the taxes due on January 1, 1995.
8. The plaintiff shall be solely responsible for repayment of the loan owed to his father.
9. The plaintiff is awarded the defendant's interest in the jointly owned real estate located in New Harbor, Maine.
10. The contents of the Weston, Connecticut home is awarded to the defendant.
11. The contents of the New Harbor cottage is awarded to the plaintiff.
12. The plaintiff shall retain his Pitney Bowes RAP retirement account free of any claims of the defendant.
13. The defendant is awarded 50% of the plaintiff's 401(k) plan, stated value $91,963.00.
14. The plaintiff shall retain his Society Bank custodial account as his sole property.
15. The defendant shall retain her 50% interest in the New Harbor, Maine cottage owned in common with her sister.
16. The defendant shall retain her deferred assets, stated value $10,682.00 as her sole property.
17. The plaintiff shall continue to maintain the John Hancock life insurance policy in the face amount of $250,000.00 for the children as a group as primary beneficiaries for so long as the plaintiff is obligated for child support. CT Page 5464
18. The plaintiff shall retain his stock options, his Pitney Bowes life insurance policy, his Smith Barney account, and his checking account.
19. The defendant is awarded all the Westport Bank savings and checking accounts, the Crown Corp shares of stock and the 1987 Chevrolet.
20. The plaintiff is ordered to pay to the defendant the sum of $25,000.00 as lump sum alimony due on or before July 1, 1995, allowing her the means to pay Weston's real estate taxes and to shop for an automobile.
21. The defendant is awarded an allowance to defend the plaintiff's complaint and to prosecute her cross-complaint in the amount of $17,000.00, due and payable on or before August 1, 1995.
22. The defendant shall be solely responsible for the liabilities listed on her finance affidavit.
Counsel for the defendant shall draft the judgment file and is directed to do so within 30 days.
The foregoing orders are entered after considering the import of Ippolito v. Ippolito, 28 Conn. App. 745. The evidence has not demonstrated that the defendant's prospects of attaining "self sufficiency" exist. To suggest that the defendant's self sufficiency equates with an EMT job fails to consider the station the plaintiff had been furnishing his family prior to leaving the marital home. This court finds no rational basis for time limited alimony.
HARRIGAN, J.